Madam Clerk, please call the case. Case number 3-16-0658, Foremost Insurance Company Grand Rapids Michigan, appellant by Mark Pittenarrow v. Jeremy McKinney, appellee by Mr. Sheridan. Good morning, Your Honors. Counsel, may it please the Court, my name is Mark Pittenarrow and I represent the appellant in this case, Foremost Insurance. Your Honors, this case is a subrogation matter. It's a subrogation matter that involves a lease between my client's insured and the defendant. Like many cases before it, the lease delineated the obligations and the rights and responsibilities of each party to this case. We're here because the circuit court granted the defendant's motion to dismiss my client's complaint, arguing that pursuant to paragraph 10 of that lease, there was no intent by the parties to exculpate the defendant for negligently caused fire damage. We believe that decision was an error. We believe it was an error because the court did not discuss the entire aspect of paragraph 10. It did not read paragraph 10 in its entirety and further did not take into any consideration any other provisions of the lease itself. With respect to paragraph 10, it is also important, that paragraph specifically, because as the court did not consider in making its ruling, it is the only provision in the lease that discusses the allocation of insurance risks in this case. And as we understood from the Fourth District in Town Realty v. Schaefer, that is perhaps the most important factor when considering whether a defendant can be held responsible for negligently caused fire damage under a lease. It's who bears the insurance burden? Who bears that risk? And in paragraph 10, it makes it very clear that the tenant himself was to bear the risk. He was required under that provision of the lease to secure the insurance, to secure any risk, whether it be personal property, real property, or otherwise. There is no other provision in the lease that speaks to insurance. There is no other provision in the lease that required the landlord, my client's insured, to obtain the insurance governing any risk in this case. The court did not consider that provision. And if that is to be the importance or the important factor in rendering a decision, the court ignored it. The other issue with respect to paragraph 10, Your Honors, is that the court omitted certain language that I think is key. Within paragraph 10, we first talk about that the owner, my client's insured, would not be responsible for any loss of property. It's not defined property there. It's just any loss of property caused by fire, breakage, theft, burglary, or otherwise. Property, we understand, means a tract of land, a chattel. It's something that we, as people, can exercise rights of use, possession, enjoyment over. That includes real property. It includes personal property. The parties here chose not to define it any further than to say property, which is really an umbrella term encompassing all kinds of property that we can have. The parties went further, though, in that paragraph to suggest that the landlord would not be responsible for any accidental damage to persons or property in or about the leased premises. It's the in or about language that the court did not consider in its ruling because that language necessarily, by definition, changes the kind of property that would be considered. It must be personal. Real property cannot be in and about itself. Personal property is the only thing that can be in or about something else, whether it be in a garage, on a deck, in the backyard, in the house itself. So the parties themselves understood what they were talking about here, and the circuit court did not take that into consideration. The court also did not take into consideration other paragraphs within the lease, such as paragraph 6, 13, 14, 18, etc., as I've mentioned in my brief, where in those provisions, the only discussion is about who's responsible for the kind of damages contemplated within those provisions. And in those provisions, it is only the defendant that is responsible. Again, the landlord is not. The landlord has nothing to do with those damages. It's the defendant who causes them, and it's the defendant who will pay for them under those provisions. The circuit court did not consider any of those provisions. So we can't say that it considered the lease as a whole when rendering its decision. And that's important because the Dix Mutual decision made it very clear that that's what the court is supposed to do. The Dix Mutual case is very, very simple. It was a very simple lease under consideration. And the court there said that there is a general common law rule that the defendant normally will be on the hook, liable, for the damage he causes by his negligence, unless the parties intended to say otherwise. And in that case, Dix Mutual, the lease was very clear that the insurance risk, that all-important insurance risk, only inured to the tenant and only with respect to his personal property. That's it. That's different here. But that's important because in this case, the parties decided that their insurance risk was going to be borne solely by the defendant. And it did not limit it solely to personal property pursuant to Paragraph 10. The other thing that's important to consider is that in all of the cases really cited by the parties, with the exception of the Nelson v. Greenberg decision by the Second District and the Auto Owners v. Callahan opinion from this district, all of those cases, with the exception of those two, necessarily understood that the landlord himself, either by an explicit provision in the lease or implicit language in the lease itself, was to procure the insurance to cover the building. That's not the case here. That is not the case here at all. There is no provision in the lease that says the landlord must procure or will procure, either explicitly or implicitly, any insurance on the building. He did. I will concede that point. He did. My client provided that insurance. But that's really not the important consideration because that has nothing to do with the lease itself. It's what's in the lease that's really important. And in this case, there's no provision that he be required to do it. And that sets this case apart, I think, from all of those others that did talk about the landlord and the insurance risk that that landlord bore. And really, Your Honors, the case is no more complicated than that. I could stand here and belabor the point, but the reality is there are no definitions in this lease, defining what the parties meant by property, what the parties meant by insurance, who was to provide it, et cetera. In the absence of that, this Court must take the general meanings of these words. Now, I suspect my opponent will come up here and argue that lease premises, dwelling, property, those words that are used in the lease and those words that were referred to by the circuit court in its order denying or granting a motion to dismiss all mean something other than personal property, or that they mean simply personal property. If we look at the circuit court's order, the court ruled that the, quote, lease in question makes clear that there's clear distinction between property, lease premises, and dwelling. Paragraph 10's reference to property in connection to firebreak or otherwise clearly refers to personal property. I will concede that property, lease premises, dwelling, within the context of the lease itself, probably does refer to the real property, the place where the defendant rented and lived. Having said that, I think that's a clear distinction as to what paragraph 10 also means when they say property in or about the lease premises. That's a clear distinction between what was to be insured by the tenant here and what was meant in terms of what risk that insurance was to cover. And for those reasons, again, because the circuit court did not consider all of paragraph 10 and did not consider any of the other paragraphs in the lease, I fail to see how the court actually ruled on the lease as a whole as Dix requires the court to do. And that is the error, failing to consider the lease as a whole, focusing right on paragraph 10 and omitting some of the language we believe was error. And we believe based on that error, the case should be remanded back to the circuit court for further proceedings. Thank you. Counsel. Good evening, Your Honors. Counsel. Hey, please report. My name is Luke Sheridan. I represent the defendant, Jeremy McKinney, the appellee in this matter. Your Honors, I'm well-versed with the law in this area. There's numerous cases throughout the districts in Illinois, including the third district here, interpreting lease provisions as it relates to analyzing the lease as a whole and determining the intent of the parties, whether the intent was to exculpate the tenant from any negligently caused fire damage or to require the tenant to be responsible for negligently caused fire damage. The Dix case is controlling in this matter, Your Honors. It does set forth the common law rule, but then it goes on to carve out an exception or to that if the parties intended to exculpate the tenant from negligently caused fire damage, their intent would be enforced. The Dix court then uses language in its decision as a whole. The lease does not reflect any intent that during the course of the one-year term, the tenant would be responsible for any fire damage to the realty. District courts have taken that language of Dix, as well as the third district, in ruling that or determining when evaluating a lease that a tenant is not liable for fire damage to the lease premises unless the terms of the lease construed as a whole clearly indicate that the parties intended for the tenant to be liable for such damage. I don't know what the trial court did in terms of if it reviewed the lease as a whole or not. Its opinion, his opinion, deals with one particular paragraph, but I don't think you can then assume that the trial court didn't look at the lease. That's just because one part of the lease is addressed in the order, doesn't necessarily follow that the trial court didn't evaluate the lease as a whole. When you evaluate the lease as a whole, it is clear that the parties intended to exculpate Mr. McKinney from fire damage. At the very least, it doesn't demonstrate a clear intent that Mr. McKinney would be liable for negligently caused fire damage. Paragraph 10 is a paragraph to evaluate in this lease, but it's not the only one to consider. There are other paragraphs that if the intent of the parties was to establish that Mr. McKinney would be liable for negligently caused fire damage,  such as paragraph 6, paragraph 13, paragraph 14, or paragraph 18. Paragraph 13 really doesn't apply and is not specific enough, as it only relates to any damages not reported prior to moving. With the exception of Nelson v. Greenberg, there is no case that has found that the phrase, any damage is sufficient to establish that the parties intended a tenant to be liable for negligently caused fire damage. Notably, Greenberg was decided five months after Dix. And unlike Dix, where the parties contemplated a potential loss resulting from fire, there was no such contemplation set forth in the lease in Nelson v. Greenberg. In our case, there certainly was a consideration of potential loss of fire, and that gets us to paragraph 10. But paragraph 10, a plain and simple reading of paragraph 10, is talking about Mr. McKinney's personal property. And I agree with counsel for Plaintiff that the words property, relating to any loss of property by fire, and accidental damage to personal property, will mean personal property. And that's all they mean. Plaintiff argues that the language, the word property, when referenced in paragraph 10 as it relates to any loss of property by fire, means the realty as well as personal property, but then argues that only personal property is meant in the second clause when it talks about accidental loss. When you consider paragraph 10 in total, it's clear it's referring to personal property. When the lease refers to property in other areas, where it's at references or means the lease premises or the premises, it's clear from those paragraphs that that's what the word small peak property means in those paragraphs. That's not what we have here. We have paragraph 10 that talks about property, meaning the insurer, the tenant's personal property. Also, the way that the plaintiff would read paragraph 10 would mean that the tenant is liable for all damage to the property from fire, regardless of cause, regardless if it was the tenant's negligence, the owner's negligence in some manner in terms of what may have caused it, or an accidental electrical fire. In essence, that interpretation makes the tenant the insurer of the property. The insurance that's required in paragraph 10 is what's commonly referred to as renter's insurance. Well, that renter's insurance protects the tenant's personal property and liability for personal injuries that may occur on the premises that the tenant would be responsible for. That is the only aspect of insurance. When counsel talks about that one of the most important factors is discussing the obligations of insurance, it's not insurance just like willy-nilly insurance. It's the obligation of fire insurance to protect the property. If someone is obligated to obtain fire insurance, then there's no need for two people to get insurance for fire insurance. Importantly, there is no requirement in DICS that the landlord obtain fire insurance. There is no discussion in DICS about insurance. All it talks about is the tenant is going to assume risk for his or her property. You can get insurance or not, but don't look for the landlord if your property is damaged. That's exactly what paragraph 10 is doing. This court in auto owners had an opportunity to evaluate a lease. I would suggest that in that ruling the court determined that the lease was not sufficient to establish that the tenant was liable for negligently caused fire damage. In that lease, again, there was no necessary discussion of fire. There was no necessary discussion of insurance, but the court reviewed it and determined that the lease itself did not demonstrate the intent to establish that the tenant was liable for negligently caused fire damage. I know Justice Holdren has issued a dissent, and he's not on the panel this morning, but the dissent in there he focused on, well, unlike in DICS, there was no discussion of fire damage so that any breakage really should apply to fire damage. Again, our case is significantly on point with DICS with respect to paragraph 10, saying that the tenant is going to be responsible for his property and insure his property in the event of a loss. Now, paragraph 18, if you're going to evaluate the lease as a whole and look at all the paragraphs, paragraph 18 clearly talks about the tenant's responsibility for damage to the dwelling. It doesn't say the property. It says the dwelling, the premises, clearly referring to the leased premises, and nowhere in there does it establish or set forth any responsibility that the tenant would be liable or responsible for negligently caused fire damage. When a provision of the lease clearly articulates what a tenant is responsible for, for damage to a particular piece of realty and does not include fire damage, that demonstrates the clear intent of the parties that the tenant would be not liable for it, and in fact the intent was to expropriate the tenant from liability. Again, but at the very least, at the very least, this lease does not demonstrate the clear intent that Mr. McKinney would be liable for negligently caused fire damage. If Your Honors have any questions, I'd be glad to address any questions that Your Honors may have. With that, Justices, we request that this panel affirm the trial court's dismissal of the complaint, and I appreciate your time. Thank you, Counsel. Counsel is correct that Dick's mutual decision is controlling in this case. He argues that in that decision there was no intent to hold the tenant liable for negligently caused fire damage, but the question then must be why. Why is that? And it's because the lease of the questionnaire was a simple five-paragraph lease, and the only discussion about who's going to be responsible for what was in paragraph five, and in that paragraph it simply said, as Counsel mentioned, he's correct, there's no mention of insurance in that paragraph, but it's whose risk must be covered, whose risk will be dealt with, and in that paragraph it's very clear that the only risk is the tenant's risk or his own personal property, and that the Supreme Court found significant. That's different from this case, because in paragraph ten, this lease makes it very clear that the tenant and the tenant alone is to procure insurance. It doesn't specify what kind, Counsel's correct, but it does say that he is to procure insurance to offset any risk, and I'm going to suggest to you that that's much more broad than the Dix mutual decision, which focused like a laser on personal property of the tenant. That's a key difference between the two cases, and why a result that I see, remanded to the circuit court, reversing its decision, is compelled by Dix and is in harmony with it. With respect to the Court's ruling, it's true. The Court's ruling is a three-page written order. It laid out some facts. It discussed Dix. It discussed Nelson v. Greenberg, and then it focused on paragraph ten. So, yes, we don't know whether the Court read the lease as a whole. It does refer to that language in its order. However, what's significant about the order, like I said before, is what it did not consider in paragraph ten, the language it omitted in its ruling. If we understand that paragraph ten has certain language with respect to property in or about the lease premises, that's a significance that the circuit court ignored, and that's what makes this case, this lease, different from the lease at issue even in auto owners v. Callahan, Nelson v. Greenberg, Dix mutual. This lease in particular, it's much more differently crafted. The intent is more clear of the parties here based on the language they chose to use and who was to bear the risk. Paragraph ten does not mean simply personal property. It can't. It cannot by its very language. If we talk about any property, we understand what the definition of property means, and then the lease later clarifies property in or about the lease premises. That's a clear distinction by the parties. Counsel's objection to that language, based on my argument, is that then, well, the tenant would be the insurer of the property. Well, is that really a wrong result based on what these parties agreed to in this lease? And I would suggest it isn't. Again, because the only party here required to obtain insurance is the tenant. Clearly, it was contemplated that fire would cause some damage here, breakage, accidental causes, but the tenant alone is to insure any of those risks, any of them. Counsel mentioned renter's insurance. Well, apparently that's what his client had. It's not really clear from the record if that's in fact the case, but let's assume it's right, and that's the kind of insurance we're doing here. Renter's insurance carries liability insurance in it. Why would that be? Well, to cover incidents where somebody causes harm negligently to a person's property, things like that, the risk itself, the real estate, personal property. That's what it's for. So simply because of the fact that my client might have obtained fire insurance doesn't offset the fact that he has liability insurance covering what his client does or doesn't do. Counsel mentioned this notion of the small P property in paragraph 10 as somehow significant to the outcome of this case. I'm going to suggest to the panel that it's not as significant as he suggests because if we look to the lease's introductory paragraph, the parties there refer to the leased property where the defendant and his family lived as the dwelling, and then just two sentences later, roughly, they refer to it as the property, small P. So that is of little significance in this case because in paragraph 10 it's again small P property. That's a distinction without a difference. It's clear that these parties to this lease understood lease premises, dwelling, property, where they used it in the lease other than paragraph 10 to mean the real property where these people lived. But they chose to clarify it later in paragraph 10, talking about property in or about the lease premises. That's significant, and that makes this lease different from all the others in those cases, and that's what makes the circuit court's ruling deficient, in my opinion, because it didn't consider that. One minute, please. Would you agree that paragraph 10 is ambiguous? I don't believe it is, and for the reasons I've mentioned. We talk about, or the parties talk about in that lease, any property. You have to understand what property means, and then they later chose to say property in or about the lease premises in respect to accidental damage. Now, parties don't do that unless they're referring to personal property because again, that's the only kind of property that can be in or about something. So no, I don't think it is ambiguous based on that distinction that they chose. Your brief indicates that your client paid $131,000. A little over, yes. That didn't include any damage to tenants' property. It did not. It was solely for the building. That's correct. And again, that's because my client did have fire insurance. It voluntarily took a policy on fire or for fire insurance covering the building. I want to make that very clear again. They weren't required to under the lease, and that is significant. That was significant. But yes, they did. Thank you, Your Honor. Thank you, Counsel, for your arguments.